Thomas W. **HEINSOHN**, Plaintiff,

v.

Irving H. **LEVIN**, San Diego Basketball, Inc. and the National Basketball Association, Defendants.

Civ. A. No. 78–1865–C.

United States District Court, D. Massachusetts.

July 27, 1978.

Mitchell Benjoya, Boston, Mass., for plaintiff.

Robert L. Caporale, Fine & Ambrogne, Boston, Mass., for defendants.

## MEMORANDUM

CAFFREY, Chief Judge.

This is a civil action in which plaintiff seeks declaratory judgment pursuant to 28 U.S.C.A. § 2201. Jurisdiction of the Court is invoked on the basis of 28 U.S.C.A. § 1332. Plaintiff also seeks additional relief herein consisting of a temporary restraining order, preliminary and permanent injunctions. The case was filed at 10:43 A.M. on July 26, 1978 and heard on the application for a temporary restraining order a preliminary injunction at 3:00 P.M. the same day. After hearing, I find and rule as follows:

Plaintiff is a nationally-known, former star basketball player for Holy Cross College and the Boston Celtics basketball team. He has also served a number of years as coach of the Celtics. Defendant is Irving H. Levin, now of San Diego, California, a former principal of a Massachusetts corporation, the Boston Celtics Basketball Club, Inc. (Celtics). Mr. Levin has recently become involved in a rather complicated exchange of all assets of the Celtics for all assets of another National Basketball Association (NBA) team, the Buffalo Braves. The swap of corporate assets of these two teams is stated to be of all corporate assets other than player contracts. After the swap of such assets, Mr. Levin entered into negotiations for the creation of a corporation to be called the San Diego National Basketball Association Franchise, Inc. As of today's date, this corporation has not been officially chartered by the State of California, but, when chartered, it will operate a National Basketball Association franchise in San Diego.

On June 8, 1977, plaintiff entered into a two-page written contract with the Celtics under the terms of which the Celtics agreed to employ plaintiff as their head basketball coach for a two-year period to include the 1977–1978 and 1978–1979 NBA seasons. Celtics agreed to pay plaintiff $100,000 salary for each season. The $100,000 was to be paid as follows: (1) $80,000 as current compensation for each season to be paid in twelve equal semi-monthly installments commencing November 1st of each of the

above seasons and continuing with such payments on the first and fifteenth of each month until the $80,000 was paid in full; (2) $20,000 as deferred compensation on a schedule not relevant to this ruling. It was stipulated at the hearing that the $80,000 for the 1977–1978 season has been paid in full to Mr. Heinsohn as of April 15, 1978 and that no payment is due to him under the contract until next November 1.

The nub of the controversy between the parties seems to be that plaintiff, who was discharged from his duties as Celtics head coach December 30, 1977, has been contacted by defendant Irving H. Levin, described in the complaint as Chairman of the Board of Directors and a majority stockholder of the Celtics, relative to plaintiff becoming the head coach of the new San Diego National Basketball Association franchise team. The complaint recites that negotiations have been in progress between Levin, Heinsohn, and their counsel for some time although the parties are not in agreement as to the length of these negotiations. Plaintiff now alleges that he has been offered the job in San Diego, that he is not clear whether or not he wishes to accept it because it has been represented to him that it would involve responsibilities "entirely different . . ." than those he had in Boston and would also involve moving his home and family to San Diego to the prejudice of certain business arrangements he now has in the Greater Boston area. Plaintiff alleges that negotiations with Levin have lead him to believe that, if he declines the San Diego position, Levin will cause the Celtics to breach the contract entered into on June 8, 1977 and refuse to pay him the $100,000 due to him for the 1978–1979 season. Plaintiff further alleges that he does not know whether or not he has a duty to mitigate damages the Celtics would otherwise suffer by accepting the San Diego position.

The Court is satisfied that as of now no such entity exists as the San Diego National Basketball Association Franchise, Inc., named as a party defendant, and, accordingly, as to that non-existent entity the case is dismissed. The Court is also satisfied that it has been established on the record that the National Basketball Association voted on July 7 to approve a franchise in San Diego and took final action approving that franchise. Consequently, since the only relief requested against the National Basketball Association is an injunction against its approving a franchise at San Diego, the case is dismissed as against the National Basketball Association on the grounds of mootness. With reference to defendant Levin, it is obvious that he is sued in his capacity as an officer and principal stockholder of the Celtics. It is equally obvious that the Celtics, not Levin, is the other party to the contract entered into by plaintiff on June 8, 1977. I rule that the Celtics as the only other party to the employment contract in issue herein is an indispensable party and must be joined as a party-defendant in accordance with the provisions of Rule 19 of the Federal Rules of Civil Procedure. *See Haas v. Jefferson National Bank of Miami Beach*, 442 F.2d 394 (5th Cir. 1971). I further rule that, because addition of this indispensable party destroys complete diversity between plaintiff and all parties defendant, it follows that the case is vulnerable to a motion to dismiss on the grounds of incomplete diversity. As a corollary, it follows that plaintiff has not shown herein a probability of success on the merits, a *sine qua non* for obtaining injunctive relief. *See Garzaro v. University of Puerto Rico*, 575 F.2d 335, at 338 (1st Cir. 1978); *Tuxworth v. Froehlke*, 449 F.2d 763, 764 (1st Cir. 1971); *Automatic Radio Mfg. Co. v. Ford Motor Co.*, 390 U.S. 113, 115–16 (1st Cir.), *cert. denied*, 391 U.S. 914, 88 S.Ct. 1807, 20 L.Ed.2d 653 (1968).

Plaintiff likewise has failed to persuade the Court that there is involved herein a likelihood of his sustaining irreparable harm if the injunction is not granted, since the prime thrust of his request for declaratory and injunctive relief is obviation of his sustaining monetary damages now or in the future.

Because of the public interest throughout New England in the Celtics and in Mr.

Heinsohn, I believe it appropriate to expressly state what the Court is NOT deciding by denying the application for injunctive relief. I am not deciding that the Celtics may renege on their obligation to pay plaintiff $100,000 for the 1978–1979 NBA basketball season; I am not ruling that plaintiff does not have a right to recover that sum under the contract executed June 8, 1977; I am not saying that he can be forced by the terms of that contract to move to San Diego and undertake substantially different responsibilities than those contemplated by the contract he signed to coach the Celtics; and, lastly, I am not ruling that Mr. Heinsohn has any duty to "mitigate damages" by coaching in San Diego for a presently nonexisting* corporation.

Accordingly, an Order will enter denying the application for injunctive relief.

---

* Subsequent to the hearing, the Court was advised that a California corporation was char-
tered yesterday to operate the San Diego basketball franchise.